# EXHIBIT A

RECEIVED
TOWN CLERK
WESTON, MA

2009 JUL 15 AM 10: 24



# TOWN OF WESTON
## MASSACHUSETTS

### BOARD OF APPEALS

There having been presented to the Board a petition for a variance dated November 5, 2007 by **Omnipoint Communications Inc/T-Mobile USA, Inc. c/o Prince, Lobel, Glovsky and Tye LLP, 100 Cambridge Street, Suite 2200, Boston, MA** the Board decided to hold a hearing on said petition on Monday, January 14, 2008 at 8:10 p.m. and caused the following notice to be published in The Town Crier, a newspaper of general circulation in Weston on December 27, 2007 and January 3, 2008.

## TOWN OF WESTON
## MASSACHUSETTS

### BOARD OF APPEALS
**Hearing Notice**

Notice is hereby given that the Board of Appeals of the Town of Weston will hold a public hearing on **Monday, January 14, 2008 at 8:10 P.M.** in a conference room at the Weston Town Hall, on an application by **Omnipoint Communications Inc/T-Mobile USA, Inc. c/o Prince, Lobel, Glovsky and Tye LLP, 100 Cambridge Street, Suite 2200, Boston, MA** as to **300 Conant Road** (Map 7, Lot 110-71 &110-1) under the Telecommunication Act of 1996, to place telecommunications antennas concealed in 100-foot monopole, with associated compound, requesting 1) a variance exceeding height allowance, By-law Sect. IV.E.2.c, and 2) a variance for placement outside the Personal Wireless Service Overlay Districts I and II, By-law Sect. V.J. The petitions and plans on all above applications with said Board of Appeals are available for public inspection in the office of the Board of Appeals on Monday through Friday, from 9:00A.M. to 4:30 P.M.

Board of Appeals of the Town of Weston
By: Wendy Kaplan Armour, Chair

The Board also mailed the foregoing notice postage prepaid on December 27, 2007, to the persons deemed by the Assessors to be the parties in interest as they appear on the most recent tax list.

Notice was also sent to Board of Appeals Members: **Armour, Li, Margulies,** as well as Board of Selectmen, Board of Assessors, Board of Health, Building Inspector, Conservation, Fire Chief, Planning Board Chairman, and Town Clerk, plus Planning Boards of Lincoln, Natick, Newton, Waltham, Wayland, Wellesley

                                                                                                              Noreen H. Stockman, Administrator
                                                                                                              Weston Board of Appeals

..........................................................................................................

Pursuant to the foregoing notice the Board held a public hearing on Monday, January 28, 2008 at approximately 7:30 P.M. at the Weston Town Hall. The following members were present:

Wendy Kaplan Armour, Chair
Winifred I. Li
Marc Margulies

Also present were Patricia Cantor of Kopelman & Paige LLC, and David Maxson of Broadcast Signal Lab, consultants to the Town.

Documents on file:
- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman and Noreen Stockman, continuing to March 17, 2008, and filed with the Town Clerk on January 15, 2008
- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Jennifer E. Lewis and Noreen Stockman, dated June 16, 2008, and filed with the Town Clerk on June 23, 2008

- Facsimile from Jennifer E. Lewis of Prince, Lobel, Glovsky and Tye LLP, dated June 9, 2008, requesting extension of hearing to September 15, 2008

- Facsimile from Brian S. Grossman of Prince, Lobel, Glovsky and Tye LLP, dated September 12, 2008, requesting extension of hearing from September 15, 2008

2

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman and Noreen Stockman, dated September 15, 2008, and filed with the Town Clerk on September 16, 2008 and September 18, 2008

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman (11-4-2008) and Noreen Stockman (10-29-2008), dated December 9 and 10, 2008, and filed with the Town Clerk on November 6, 2008

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman (11-4-2008) and Noreen Stockman (10-29-2008), dated December 9 and 10, 2008, and filed with the Town Clerk on November 6, 2008

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman (12-10-2008) and Noreen Stockman (12-9-2008), and filed with the Town Clerk on December 10, 2008

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman and Noreen Stockman, dated December 9 and 10, 2008, and filed with the Town Clerk on December 10, 2009

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman and Wendy Kaplan Armour, dated February 24, 2009, and filed with the Town Clerk on February 25, 2009

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman and Wendy Kaplan Armour, dated April 14, 2009, and filed with the Town Clerk on April 15, 2009

- "Agreement for Extension of Statutory Decision and Filing Deadline", signed by Brian Grossman and Noreen Stockman, dated May 26, 2009, and filed with the Town Clerk on May 26, 2009; as updated on June 29, 2009 by Brian Grossman and Wendy Kaplan Armour, and filed with Clerk

- letter from Alison B. Brotman of Verizon Wireless, dated June 1, 2009

- letter dated September 12, 2008 from Brian S. Grossman

- letter dated June 9, 2008 from Jennifer E. Lewis

- e-mail from Jennifer Lewis dated April 28, 2008

- "NextG Networks"; http://www.nextgnetworks.net/communities/howwelook.html

- "WiFi coverage without towers" by Dan Cabot, October 26, 2006 *The Martha's Vineyard Times*

3

- Letter from Joanna Caira, 309 Concord Rd, dated March 4, 2008

- "Memorandum" from James B. Hall of Coler & Colantonio, dated June 15, 2007

- "New wireless network spreading, pole by pole", by Kay Lazar, March 2, 2008 *The Boston Globe*

- Letter dated September 4, 2007 from Gloria Cole, Co-Chair of the Weston Historical Commission

- Letter dated February 21, 2008 from Gloria Cole, Co-Chair of the Weston Historical Commission

- E-mail from Kevin Kirmelewicz dated February 26, 2008

- E-mail with coverage plots from Brian Grossman, dated February 19, 2008

- E-mail from Noreen Stockman dated February 19, 2008

- E-mail from Noreen Stockman dated January 23, 2008

- E-mail from Sara Osborn, 337 Conant Rd, dated January 6, 2008

- "Application for Use and Dimensional Variances for a Wireless Communication Facility", prepared by Craig Tateronis, Prince, Lobel, Glovsky & Tye LLP, 100 Cambridge Street, Boston, MA, dated November 16, 2007

- E-mail from Joanne Caira, 309 Conant Rd, January 2, 2008

- Letter from Jennifer E. Lewis, Prince Lobel Glovsky & Tye LLP, dated January 3, 2008

- Letter from the Planning Board dated January 14, 2008

- Petition opposing the Omnipoint proposal presented to the Board of Appeals on March 3, 2008, signed by 40 individuals

- E-mail from J.R. Allen, 235 Merriam Street, dated January 12, 2008

- E-mail from James Roan, 32 Bradyll Rd, dated January 14, 2008

- E-mail from John Carusone, 308 Conant Road, dated January 12, 2008

- E-mail from BJ Brown Devlin, 331 Conant Road, dated January 11, 2008

- E-mail from Habib and Sandra Rahman, 30 Westland Rd, dated January 14, 2008

- Phone message from Peter Tao, 33 Willard Road, expressing opposition to proposal on January 12, 2008

- Phone message from Karen and Jim Levin, 51 Hallet Hill Road, expressing opposition to proposal on January 13, 2008

- Coverage plots, "Existing T-Mobile Coverage, Weston Area, Existing with Proposed at 87' AGL, Proposed Doublet Hill Site, Figure 2,3,4, 5a, 6,8,9,10, 11, 12, 13 (Cat Rock at 60 ft), 13 (with 354 South Great Road Tower), and 14.

The Premises is located in the Single Family Residence C and D Districts. The land along Conant Road is in the D District. The balance of the lot is in the C District. The existing dwelling, numbered 300 Conant Road, comprises 1.5 acres. The adjoining lot, improved with a barn, currently accessed through 300 Conant Road, comprises 10.4 acres. The property is vegetated and contains wetland areas.

Present at the hearing were Board members Wendy Kaplan Armour, Winifred I. Li, and Marc Margulies. Town Counsel, Patricia Cantor of Kopelman and Paige PC, and David Maxson of Broadcast Signal Labs were present for consultation to the Board.

Appearing representing Omnipoint Communications Inc./T-Mobile USA, Inc., 15 Commerce Way, Suite B, Norton, MA (the "Petitioner")was Brian S. Grossman of Prince, Lobel, Glovsky and Tye LLC, 100 Cambridge Street, Suite 2200, Boston, MA, with Byron Perez, radio frequency analyst for Omnipoint. The legal notice was read into the record. A variance is requested to exceed height limitations, and to site the person wireless telecommunications equipment outside the established Personal Wireless Service Overlay Districts (PWOSDs).

Patricia Cantor presented a brief introduction to those assembled regarding the 1996 Federal Telecommunications Act, and the licensing for wireless carriers. Ms. Cantor stated that the Zoning Board of Appeals is the local authority to apply the By-law ordinance. The Weston By-law provides two areas identified for the placement of wireless communication facilities. The placement of personal wireless telecommunication facilities is not an approved use for the proposed site. The Weston By-law does not allow use variances.

Ms. Cantor stated that towns and cities cannot prohibit service or unreasonably discriminate among providers of equivalent services. The Federal court has the jurisdiction for appeals. Ms. Cantor stated that the case law shows that it is the applicant's burden to demonstrate that they qualify for a use variance: that there exists a significant gap in service and that there are no alternative sites. Ms. Cantor also raised the issue as to whether the proposal was an incidental accessory use, or a primary use, with more than one use on a lot.

Brian Grossman stated that Omnipoint is proposing to site a 100-foot monopole on the property at 300 Conant Road. Omnipoint seeks to place up to nine panel antennas on the pole, and to provide

5

for co-location for up to two additional carriers. The antennas are approximately 5.0 feet high, 13 inches wide, and 4 inches deep, attached to a triangular platform. A gps and enhanced 9-1-1 antenna will also be installed. The diameter of the pole would be approximately 36-42 inches at the base, and approximately 24-30 inches at the top.

The base diameter would be dependant on the foundation design. The area surrounding the monopole would be enclosed by a six-foot stockade fence. Mr. Grossman stated that the two parcels together comprise 11.9 acres. The monopole would be sited 500 feet from Conant Road. The pole would be 196 feet from the northerly lot boundary, 400 feet to the westerly lot line, and 500 feet to the southerly lot line. The topographic information shows Conant Road at an elevation of 124 feet, and the highest point on the 11.9 acre parcel as 142 feet. The proposed site is located 20' higher than Conant Road.

Mr. Grossman stated that the co-axial cable would run internally through the monopole. A 10-foot by 20-foot concrete pad would be installed. A battery cabinet would be installed for back-up power. There would also be a telephone cabinet and transformer. An ice bridge (metal cover) would run from the tower to the cabinet to cover the co-axial cable.

Access to the monopole would be via the existing driveway. The driveway would be extended toward the west for the siting of and access to the monopole. Typically technicians would visit the site approximately once or twice per month post installation.

Mr. Grossman stated that the next closest wireless site is the Weston Police Station. The areas to the north of this site are outside the established wireless districts: PWSOD I and II. Mr. Grossman stated that there is no area north of the Police Department in the personal wireless service districts. This proposal would provide for wireless coverage for a northerly area of town. Mr. Grossman stated that the next location beyond this proposed site is the DPW in Lincoln, MA. Mr. Grossman stated that there was not an existing installation in the area within which to collocate.

It was noted that the Board had approved a proposal for 1 Sudbury Road (Campion Center), but that the coverage this site would provide was not included in the presentation. Mr. Grossman stated that the site was not included because it was not in operation. He stated that the object is to provide 'in vehicle' coverage in the Conant Road/North Avenue area.

The lot is improved with a single family dwelling and a barn. These buildings will remain, with no change in use. Mr. Viles, owner of the property, stated that the barn is currently used for storage, and that it is approximately three stories. The two-story dwelling and barn are of historical value since they were constructed in 1890. The Board inquired about the possibility of using the existing barn on the premises, and reducing the height of the proposal.

Mr. Grossman stated that the antenna must be of sufficient height to clear the tree line. He stated that they have allocated frequencies, which provide further coverage with height. They seek to provide subscribers with reliable coverage. Photographs of a balloon test were included in Tab 5 of the "Application for Use and Dimensional Variances for a Wireless Communication Facility" dated November 16, 2007. The balloon was sited "approximately 75 feet to the east of the proposed Project Site".

The Board inquired about the alternative sites. Mr. Grossman stated that the United Methodist church refused. He stated that they will check on the gas station on Route 117. He stated that there was no response from 405 North Street. The Board mentioned the Dairy Joy on Route 117, the Sunrise Retirement home plus Town owned property, such as the transfer station, and the Cat Rock water tank were potential sites.

The Planning Board letter of January 14, 2008 was entered into the record. The letter included the preference to deliberately avoid neighborhoods, stating a preference to used institutional, commercial or municipal use sites. Stealth design and building mounts are promoted to lessen the visual and aesthetic impacts on the Town, such as the stealth antenna in a barn at 487 Wellesley Street. The Planning Board urged a crane test on the exact locus in order to test the Petitioner's assertion that the tower would not be visible. The Planning Board expressed that a 100-foot monopole would violate the expressed objectives, and will be visible from the neighborhoods and streets. The vegetation would not be sufficient to hide the structure. A structure that is nearly three times the height of a single family dwelling, in the middle of a neighborhood would have a significant detrimental impact. The Planning Board Design/Siting/Planning Guidelines specify that they seek development that shall be integrated into the existing terrain and surrounding landscape, minimizing used of hilltops, preserving natural or historic features, retention of open space, screen objectionable features, and include design that is in harmony with the prevailing character and scale of buildings in the neighborhood and the Town. Conant Road is a designated Scenic Road, pursuant to M.G.L. Ch. 40A, §15C and Article XXVI of the General By-laws of Weston.

David Maxson of Broadcast Signal Lab, 505 Main Street, Medfield, MA stated that it is best to meet community sensitivities regarding proposals. He stated that the coverage plots should show sites approved or considered, and to specify the level of coverage, such as 'in vehicle'. Mr. Maxson stated that the districts created for PWSODs are insufficient to provide coverage for the town. Mr. Maxson stated he has done town-wide wireless plans for Medfield plus eight Cape communities.

John Carlton Foss inquired about alternative sites. He stated that where the wireless districts in Weston are chosen and not engineered, that the community could do planning to examine areas and provide guidance to Boards. Helen Manadis, 3 Washburn Circle inquired about utilizing Bear Hill instead.

The Board set the continuation for the hearing for March 3, 2008. They requested that any new submissions be made a minimum of two weeks before the hearing. Notice of the continuation was announced at the public hearing and posted at the Town Clerk's office and on the Town website.

March 3, 2008

The notice was read into the record continuing the hearing. James Hoyt appeared from Prince, Lobel, Glovsky and Tye LLC, with Sameer Parakkavetty, the radio frequency engineer with T-mobile, USA. Mr. Hoyt presented some supplemental information that was sent via e-mail:

- Drive data                                Figure 4
- Campion Center coverage plot              Figure 5
- Existing                                  Figure 5A
- Traffic count/population density          Figure 6
- Topographical                             Figure 7

Mr. Hoyt then distributed coverage plots for a 100-foot pole at the following sites:
- Cat Rock                                  Figure 8
- Fire Station                              Figure 9
- Dump                                      Figure 10

Mr. Hoyt stated that there is still a gap to the north on Route 117. Mr. Hoyt stated that the emphasis is in providing "in vehicle" and "in house" coverage. He stated that a half mile gap in coverage leads to dropped calls. The complaints and dropped call data point to coverage gaps.

Mr. Hoyt stated that Omnipoint does currently have some coverage at Cat Rock. Mr. Hoyt also stated that the height of the barn at 300 Conant Road, approximately 35 feet, would not be sufficient for the coverage sought. Mr. Hoyt stated that other placement options would need similar variances, and may also have neighborhood opposition.

Entered into the record is the letter from the Historical Commission, dated February 21, 2008. The Historical Commission stated that a 100-foot monopole in this historic neighborhood is totally inappropriate to the character of the neighborhood, and that the erosion of the character of the neighborhood would be an irreparable loss to a unique part of Weston. The letter notes that a 100-foot monopole would be a visual detraction to the neighborhood. Marisa Morra, co-chair of the Weston Historical Commission, was present and stated that there are two National historic areas on Route 117. She stated that a tower taller than the trees over a neighborhood is ugly and a visual detriment to the neighborhood. She additionally stated that light flashes off silver structures, as seen at Jones Road. Ms. Morra suggested that an area such as Cat Rock would be less visible, and therefore a preference for the Town. She stated that there are numerous barns that could be potential sites. Entered into the record was a petition signed by 40 neighbors opposed to the proposal, dated March 3, 2008. Joanne Caira, 309 Conant Road, stated that Conant Road is a scenic road, and that the tower would be an eyesore that exceeds the allowable height. BJ Brown Devlin, 331 Conant Road opposed the tower in a residential neighborhood, that would neither match nor complement the historic and scenic character of the area. John Carusone, 308 Conant expressed opposition to view degradation from their property. A memorandum by Coler and Colantonio, dated June 15, 2007, stated that there would be no infringement on wetlands with the proposal.

David Maxson discussed the Cat Rock water tower as a potential solution. He stated that it is offset from the center of the target area (Conant Road). Mr. Maxson also stated that Omnipoint will want to minimize overlap coverage. Mr. Maxson stated that they could use an existing utility pole to provide additional coverage, to fill a small gap. Mr. Maxson stated that the coverage plots shown do not depict lesser coverage for areas. He stated that their coverage goal is 'in vehicle' strength.

8

An inquiry was made about using microcells, at the midpoint of a small gap, on existing or replacement utility poles.

Patricia Cantor stated that cell carriers cannot be prohibited or effectively prohibited from providing service. It was stated that a Request for Proposals (RFP) would need to be issued by the Town in order to use the Cat Rock property.

Mr. Hoyt stated that they seek to provide 'in house' coverage, and to be able to provide service to meet future needs. The advanced services, including PCS and AWS will need stronger signals to provide more capacity.

John Carlton inquired about a 150-foot tower, and whether it would require a larger footprint. It was discussed that the height could be a problem, and whether there would be 'self interference' or a degraded performance. The thought was that a taller tower would be more conducive to collocation. Joanna Caira, 309 Conant Road, stated she is opposed to the monopole on private property. Scott Tellier, 19 Bradyll Road, stated that a commercial structure should be in a commercial area. He stated that the proposal is disruptive in appearance, and that sites in Lincoln should be examined. Jim Levin, 51 Hallet Hill, stated that Omnipoint should seek to fit into Weston.

Paul DiMeo, Michael Pastrone, 49 Bemis Street, Patricia Siek, 254 Merriam Street, stated they never saw the balloons at the proposed height. Patricia Siek thought a crane test would be more sufficient to see how the pole would appear on the property. Helen Maniadis, 3 Washburn Circle, referred to an article from the *Boston Globe* related to Digital Antenna Systems (DAS), which were placed on utility poles to fill in gaps. She stated that there would be fewer objections to this technology, contrasted with the 100-foot pole. Mike Rosen, 45 Bradyll Road, inquired whether 84 DBM was the right or optimum level. He stated that legally there is no rigid demarcation.

David Maxson discussed location, topography, distance angle from cell site, and time as affecting cell service and reception. He stated that computer models attempt to locate the coverage. Mr. Maxson stated that scientific information is of more value than anecdotal evidence of coverage. Greater than -84 dBm is the Petitioner's goal for indoor reception, and greater than -91 dBm is their goal for outdoor reception. Mr. Maxson stated that statistically most signals are less than 84 DBM. He stated that it is difficult to specify what constitutes a 'significant gap' in coverage, but that radio frequency personnel know gaps when they see them.

Margaret Carlton-Foss inquired why the site approved at 1 Sudbury Road (Campion Center) has not been constructed, and whether the coverage was assumed.

Henry Viles, 300 Conant Road, stated that it would be possible to get a crane in to the proposed site for the monopole.

The height of the water tower at Cat Rock was discussed, and whether it would be sufficient for construction of a monopole, including feasibility and jurisdiction. Barn locations in the vicinity of Route 117 and a farm stand known as Aunt Sadie's were mentioned. The Board asked the

petitioners to consider potential existing sites, as well as a facility at Cat Rock. A continuation was set for April 28, 2008. Notice of the continuation was announced at the public hearing, posted at the Town Clerk's office, and on the Town website.

April 28, 2008

Appearing before the Board was Jennifer E. Lewis, of Prince, Lobel, Glovsky and Tye LLP, with Troy White of Omnipoint (T-Mobile). Ms. Lewis stated that they have redesigned the proposal to a 100-foot "slick stick" monopole, instead of the 100 foot pole with the exposed antennas. This would look more similar to a flag pole, and the antennas would be a 'stealth' installation, within the pole. The same equipment would be sited at the base: 3 BTS units with a battery back up. Ms. Lewis stated that there would still be sufficient space for another carrier. Omnipoint would use the top two spots on the pole. The diameter of the pole at the base would be approximately three feet.

David Maxson stated that the flag pole located at Weston's Town Hall is 100 feet tall, as a comparison. Mr. Maxson stated that it is not required for a pole of this height to be marked or lit. These poles are typically gray, but could be any color.

Troy White stated that Omnipoint is seeking to cover North Avenue, and some land to the south where they have a coverage gap. Mr. White referred to Figure #5. He stated that 405 North Avenue covers only a portion, due to height. Mr. White stated that they seek sites that available and leaseable. He inquired about an RFP for Cat Rock.

Mr. Maxson stated that there appeared to be substantial coverage available from Cat Rock. The timeline for an RFP and for the site to be on-line was not specific. The Board noted that the use of the Cat Rock site would generate revenue to the Town, and it already improved by a water tank.

Valerie Siek, 254 Merriam Street, inquired about a pole test at the proposed site. She stated that she currently looks out over a heavily treed area. Jennifer Lewis stated that they would try to keep trees for screening, but that some would be removed for the placement of the cell pole.

John Carlton Foss, 338 Conant Road, commented that the trees in the proposed area were small trees, but that the proposal would be jarring. Helen Bruce, 3 Washburn Circle, stated that she was very upset. She stated that she is a direct abutter, and that there would be a substantial impact on her back yard. She stated that she would be interested in following up on DAS or NextG technology, and not using towers.

Al Caira, 309 Conant Road, stated that he was concerned about a decrease in property value due to the impact on the view. Steve Wagner, 201 Conant Road, and Historical Commission member, stated that there would be a negative impact to the historic Weston feel, where the pole would be visible from the street. The proposal is for a 100-foot pole with a tree line at 38 feet.

David Maxson stated that traditional cell sites utilized towers and roof top installations. He stated that there can be supplemental coverage with the use of repeaters, but that it is not terribly efficient. Microcells are useful in target areas. Mr. Maxson stated that the DAS or Distributed Antenna System, uses utility poles and fiber optic or copper cable to connect nodes back to facilities to distribute wireless connections. Mr. Maxson stated that NextG is located in Everett, Chelsea and Somerville. Brookline uses extenet, and has a base station "hotel". Mr. Maxson stated that those technologies work best in densely developed areas. Andover employed DAS to prevent a tower at Phillips Academy, by inserting nodes to feed area roads. These use existing utility poles.

Mr. Maxson stated that the FCC has had clear decisions for DAS. Cell companies are facing greater demands to provide for downloading and streaming, which requires larger capacities, and greater signal strength. Signal strength is assisted by closer proximity. Mr. Maxson stated that it is not sensible to have towers every quarter mile. Mr. Maxson stated that Weston has a rolling terrain which is wooded, and that it is not densely settled. He stated that vegetation on streets can affect lateral coverage. Mr. Maxson stated that Weston may not be dense enough for a DAS system. Mr. Maxson stated that there is success in Nantucket, due to the lower vegetation.

Mr. Maxson stated that Cat Rock provides good opportunities for coverage. It is not centrally located, but would provide good coverage in a gap area. It would not cover to the Lincoln town line, but would greatly assist with coverage of the gap. Mr. Maxson stated that Omnipoint is intending to use the top two antenna slots on the proposed pole at 300 Conant, leaving space for only one co-location. A facility at Cat Rock could provide for an opportunity for more cellular carriers.

Mr. White stated that the Campion Center site utilizes a different power, which determines how far the signal will go. Raytheon coverage doesn't reach beyond the subscribers within the building. Mr. White acknowledged that DAS works well for confined areas.

The Board stated that they seek less obtrusive means for providing coverage. They inquired about piecing together options to avoid a 100-foot pole in a back yard. It was stated that there was sense in leasing Town land, and that this could be available for more vendors.

Mr. Maxson stated that T-Mobile "dropped the ball" in not having the site acquisition personnel working with the Town during the continuation period. He stated that the transition of attorneys has not been helpful toward the process. He stated that the carriers could be more proactive with the Town in assisting with solutions which will assist with coverage and meet community needs. The hearing was continued to June 9, 2008. Notice thereof was posted at the Town Clerk's office, and on the Town website.

June 9, 2008

By e-mail letter dated September 12, 2008, Jennifer E. Lewis, the attorney with Prince, Lobel, Glovsky and Tye LLP requested that the hearing be continued. The continuation was set for

11

September 15, 2008. Notice thereof was announced at the public hearing, posted at the Town Clerk's office, and on the Town website.

September 15, 2008

Prince, Lobel, Glovsky and Tye LLP requested that the hearing be continued via e-mail dated September 12, 2008. The continuation was set for December 1, 2008. Notice thereof was announced at the public hearing, posted at the Town Clerk's office, and on the Town website. Following notice of the continuation of the hearing to December 1, 2008, the Zoning Board was advised that a Special Town meeting was scheduled for December 1, 2008, and that other Town meetings were not permitted for that date. An agreement for extension was executed between Noreen Stockman for the Town, and Brian S. Grossman for Omnipoint, continuing the hearing to December 10, 2008. This was filed with the Town Clerk on November 6, 2008. Subsequently this hearing date was scheduled to continue on February 24, 2009. An agreement for extension was executed between Noreen Stockman for the Town, and Brian S. Grossman for Omnipoint. This document was filed with the Town Clerk on December 10, 2008. Notice of the continuation was additionally posted on the Town website.

February 24, 2009

Brian Grossman of Prince, Lobel, Glovsky and Tye appeared representing Omnipoint, with Mr. Farhanchaudhry, Omnipoint's radio frequency engineer. Mr. Grossman stated that Omnipoint is working with the Town on an RFP for Cat Rock, which should be released shortly. He stated that Omnipoint would seek that location when, and if available. Mr. Grossman stated that if Cat Rock was not available, they would seek to move forward with the request for 300 Conant Road. Mr. Grossman stated that there was not an intent to submit testimony, but prefers to set a new date for a continuance.

John Carlton Foss appeared, and stated that he intended to raise the wind turbine issue for Cat Rock with the Board of Selectmen.

A continuance was set for April 14, 2009 at 7:30 p.m. Notice thereof was announced at the hearing, and posted on the Town Website.

April 14, 2009

Brian Grossman appeared with John Coste of Site Acquisition Inc, 22 Keewaydin Drive, Salem, NH.

It was stated that the Request for Proposal (RFP) was sent to the Central Registry, which is the state listing for public procurement. The RFP is expected to be published on April 22, 2009, with proposals due to the Town on May 22, 2009. Weston Town Meeting Warrant Article 33 is before the Town for a vote on May 13, 2009. Omnipoint is therefore seeking a continuance to hold open its options. A continuation was set for June 22, 2009 at 7:30 p.m., at which time the status of the application would be determined.

12

A continuance was set for June 22, 2009 at 7:30 p.m. Notice thereof was announced at the hearing, and posted on the Town Website.

Due to a Board member's commitments, the continuance date was changed from June 22, 2009 to June 29, 2009 with the consent of Brian Grossman. Notice thereof was posted at the Town Clerk's office and on the Town website.

June 29, 2009

At the opening of the hearing, the Chair announced that the motion at Town meeting, for the use of Cat Rock for a cell site, carried a majority, but not the required 2/3rds vote. The Selectmen have stated that they plan to present this matter at the fall 2009 Town meeting. The Selectmen also plan to sponsor a cell tower forum to dispel misstatements made at Town meeting, and to better assist the understanding of the residents. The Petitioner was asked if they would consider continuing the matter to that time.

Brian Grossman stated that the petition for the use of 300 Conant Road was filed in November 2007. He stated that the Petitioner waited for the RFP to be issued, and was notified on May 19, 2009 that the RFP was cancelled. He stated that they feel they have waited a reasonable period of time, but that Omnipoint wishes to go forward with the application for 300 Conant Road. Mr. Grossman stated that Cat Rock is not a viable alternative, and that future availability is speculative.

Patricia Cantor stated that the Federal Telecommunications Act of 1996 allows for the siting of cellular communication facilities. The State's Ch. 40A is less important; appeals to Zoning Board denials or conditions resulting in a prohibition of services would be filed with the Federal Court. The Federal Law requires that the carrier demonstrate that they have a significant gap in coverage, and that there are no alternative sites. The Federal law prohibits a Board from making its decision based on environmental (health) effects Ms. Cantor stated that this does not entirely remove local control, but that the majority of cases are found in favor of the industry, not the municipality. Ms. Cantor also stated that the Federal system varies from that of the State: there is a 30-day appeal period. There are then 20 days to answer a complaint. In three to six months a scheduling conference is held to schedule the rest of the litigation. An appeal of a Zoning Board grant would be filed in Superior or Land Court.

David Maxson stated that Federal rules prevail over State rules. Mr. Maxson stated that the Petitioner has asserted that there is a gap in their coverage, and has provided technical data to show the size and scope of the unreliable coverage. He stated that they have utilized common techniques of analysis to demonstrate that the signal strength is less than their target. He stated that the proposal would not fill in their gap on Route 117, but would fill in some of the gap. Mr. Maxson stated that the Petitioner has presented approximately twelve models for alternative sites; some of which might be less objectionable. Mr. Maxson stated that it is common for municipalities to use Town land, such as the water tank, to provide coverage sites for cell carriers instead of using residential property.

13

Brian Grossman referred to Figure # 6 to show traffic count and density they seek to provide service for in the area of Conant Road. Mr. Grossman stated that the closest point in the PWSOD is the Weston Police Department. Mr. Grossman pointed out that, as shown on Figure #5, Omnipoint is already located at that site. Mr. Grossman stated that the wireless service districts are too far away to reach this gap area. Mr. Grossman stated that the topographical map shows the cut off of the signal due to topography.

The Board inquired about the cupola of the barn at 300 Conant Road, and whether a stealth installation had been examined. Mr. Grossman stated that an extension on the barn, that is 30-35 feet in height, would be inadequate. Mr. Grossman referred to Figure #3, which showed the coverage plot from the barn using the existing height. Scott Heffernan, radio frequency engineer for Omnipoint, stated that there was a limit to get coverage with the barn due to severe terrain, and the fact that the hill north of the 300 Conant Road site clips the signal reaching north, I the antennas are too close to the ground. This causes a loss of signal particularly along Route 117 north of the site until the subscriber is within range of the Lincoln site. Mr. Heffernan stated that the requested 100 feet is the minimum height that would satisfy the need.

John Coste, site acquisition consultant, stated that the plots show that a 100-foot tower would just barely clear the obstacles. A lower height would provide less coverage, and would result in more dropped calls. Mr. Coste stated that the trees range in height from 40 feet to 75 feet, and that additionally there is a slope. From a structural point of view, the barn as presently constructed is not meant to support the cell equipment.

Mr. Grossman stated that another carrier has expressed interest in co-location at 300 Conant Road; this carrier would accept a lower level for their installation.

Mr. Maxson noted that Route 117 bends around a hill when coming from Lincoln, which would obstruct a cell signal from the Lincoln facility, because the terrain affects the signal. Mr. Maxson extrapolated from the topographic map that the ground elevation of the hill north of the 300 Conant Road site was approximately 55 feet higher than the Conant Road site. While an antenna at 65 feet at 300 Conant Road would achieve less coverage, it might be successful, though no data was presented to support that, or any height between 100 feet and 35 feet. Mr. Maxson also discussed the 'white' area of the coverage plot, where the 'gap' in the coverage is portrayed. Mr. Maxson stated that this 'white' area may be less than optimal, but that the user is not stationary; it mostly covers vehicle trips. Mr. Heffernan stated that there is a minimum design threshold, and that when the signal is below -84dBm, there is a gradient. Mr. Heffernan stated that a short distance, such as 0.2 mile at 35 mph would be a small area of lesser coverage before returning to reliable coverage. Mr. Maxson opined that this might not be noticeable to performance unlike in a more densely populated area. Mr. Maxson stated that Mr. Heffernan alluded to a significant gap, even with a tower lower than 100 feet, but provided no proof for that assertion.

Mr. Coste stated that some 20 percent of residential customers use exclusively cellular lines. Approximately 17 percent of the residential customers use land lines exclusively. He stated that these statistics show the shift in cellular usage. He stated that carriers will seek to provide even

14

more reliable service for the future with the growing demand. Mr. Coste stated that this current gap in service on Route 117 was identified in 2002.

Mr. Maxson inquired about the usual height of the Applicant's recently proposed cell structures in the region, and whether 100 feet was the typical height. Mr. Heffernan stated that the requested height is site-specific, and that it takes into account the terrain and canopy. Mr. Heffernan confirmed that cell structures of lower heights are less expensive. Mr. Maxson stated that if the terrain problem was correctly identified by the Applicant, other carriers may find lower heights (with co-location) insufficient for coverage. Mr. Maxson stated that from a city planning perspective, a more organized, and less haphazard development process, is a better approach to providing service.

Michael Harrity of the Board of Selectmen appeared and encouraged the Petitioner to reconsider the Cat Rock site. Mr. Harrity stated that safety was the only issue raised at Town meeting, and that the Federal government has already made determinations on that issue. Mr. Harrity also presented the Board with a copy of a letter issued by Verizon, dated June 1, 2009, refuting safety issues. Mr. Harrity stated that the Selectmen intend to convene experts at meetings with the Town to address data, issues, sensible networks, and encourage competition. Mr. Harrity suggested that the Board deny the request.

Karen Levin, 51 Hallett Hill, stated that the cupola of the barn appears to be at 150 feet elevation, and that the peak of Hallet Hill also appears to be at 150 feet of elevation. She stated that Route 117 appears to be at 130 feet. Ms. Levin wondered if some utility poles could be supplemented on Route 117 to assist with coverage. Martha Bullock of Willard Street asked about the impact on property values. Ms. Cantor stated that the court will not consider this.

Mr. Grossman referred to Figure Z1, and stated that the barn and the proposed tower site are at the same elevation. He stated that they have provided scientific evidence to demonstrate gaps in coverage. Mr. Grossman stated that Verizon, their competitor, has been building a cell network since the 1980's, and that they actually have a different band license. In order to promote competition, towns cannot discriminate between carriers. Each carrier is entitled to build out their network.

Julie Christianson of Bemis Street stated that she seeks a strategic master plan for cell development in the town. Ryuko Kikuchi, 45 Bradyll Road, stated that the tower would obstruct the view toward the back of 300 Conant Road. John Carusone, 308 Conant Road, inquired about the Distributed Antenna System (DAS). Mr. Maxson stated that DAS is mostly being utilized recently in densely developed areas or highway corridors. He stated that the Applicant has asserted in other cases that the Town cannot require specific technology from a carrier, but that the Town's interest is not in a technology, but zoning objectives pursuing a design that would have lower and more frequently spaced antenna sites, such as on rooftops and utility poles.

The hearing closed at 10:05 p.m., and the Board proceeded to deliberate.

DECISION:

15

Following due and open deliberations, the Board, by unanimous vote, denied the Petitioner's request to place telecommunications antennas concealed in a 100-foot monopole, with associated equipment, under the Telecommunication Act of 1996, including the variance for exceeding height allowance, By-law Sect. IV.E.2.c, and the variance for placement outside the Personal Wireless Service Overlay Districts I and II, By-law Sect. V.J at 300 Conant Road, as shown on the plans submitted in the packet "Application for Use and Dimensional Variances for a Wireless Communication Facility" for 300 Conant Road, Weston, MA, prepared by Prince, Lobel, Glovsky & Tye LLP, 100 Cambridge Street, Suite 2200, Boston, MA dated November 16, 2007, according to the following findings made by the Board:

Findings under federal law Telecommunications Act standards:

1. That the Petitioner did not present sufficient information to prove that there is not another site available that could serve as an alternative. The Board also recognized that the Cat Rock site may become available in a reasonable time.

2. The Petitioner failed to fully explore other locations which are less residential in nature, including the gas station on Route 117, the Dairy Joy, the Sunrise nursing facility, and the Town dump.

3. The Petitioner failed to explore other potential sites above 35 feet in height, which may provide limited coverage for the area, and would be less visually obtrusive.

4. The Board determined that the Petitioner had not demonstrated a significant gap in service.

Findings under state law G.L. c.40A, §10 Variance standards

1. That the Petitioner did not present sufficient information to prove that there is not another site available that could serve as an alternative. The Board also recognized that the Cat Rock site may become available in a reasonable time.

2. The Petitioner failed to fully explore other locations which are less residential in nature, including the gas station on Route 117, the Dairy Joy, the Sunrise nursing facility, and the Town dump.

3. The Petitioner failed to explore other potential sites above 35 feet in height, which may provide limited coverage for the area, and would be less visually obtrusive.

4. The Board determined that the Petitioner had not demonstrated a significant gap in service.

5. The Board determined that a grant of this variance was more detrimental to the neighborhood:

    a. Conant Road is a designated Scenic Road in the Weston By-law.

16

b. The 100-foot pole was proposed to be sited in a residential back yard, surrounded by other residences

c. There is no other commercial use in the area.

d. The Historic Commission expressed opposition due to the impact on historical homes in the area.

e. Testimony from neighbors indicating that the proposal would be a visual detraction which would adversely impact home values and the quality of their views in the residential area.

Petition **Denied**
A True Record

Attest: _Wendy Kaplan Armour_
Wendy Kaplan Armour
Weston Board of Appeals